Argued August 21, reversed November 10, 1975

IN THE MATTER OF A., MINOR CHILD.
STATE EX REL JUVENILE DEPARTMENT OF
KLAMATH COUNTY, *Plaintiff, v.* P., Parent
(No. 350-74, ·CA 4445), *Respondent,*
A., Minor Child, *Appellant.*

541 P2d 1301

*David L. Slader,* Metropolitan Public Defender, Portland, argued the cause and filed the brief for appellant.

*Gary Hedlund,* Klamath Falls, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FOLEY, J.

The circuit court denied a petition to terminate parental rights of the mother of a five-year-old child who has been in foster care since she was 10 months old. The child appeals.[1]

In denying termination, the trial court found that:

"* * * [T]he mother is attempting to rehabilitate herself and is apparently having considerable success. The welfare of the child is not now being jeopardized by the present situation. * * *"

We disagree and reverse.

It is contended on behalf of the child that the parental rights of the mother should be terminated because the mother is unfit by conduct seriously detrimental to the child and that integration of the child into the home is improbable in the foreseeable future due to conduct not likely to change. It is urged that there has been a lack of effort on the part of the mother to adjust her circumstances, conduct and condition to make return of the child possible and a failure of the mother to effect a lasting adjustment after reasonable efforts by available social agencies for such an extended period of time that it appears reasonable that no lasting adjustment can be effected. These contentions are substantially in the language

---

[1] ORS 419.494 provides that:

"In any proceeding the court may appoint some suitable person to appear on behalf of the child."

and ORS 419.561(1) provides that:

"Any person whose right * * * [is] adversely affected by a final order * * * may appeal therefrom. * * *"

The procedure employed in the present appeal on behalf of the child is not questioned in this proceeding.

of ORS 419.523,[2] the statute setting forth the grounds for termination of parental rights.

A., the child, was nearly six years old at the time of hearing. She was placed in the care of foster parents when she was 10 months old and has remained with them in foster care since that time. She considers the foster parents to be her parents.

The mother was 39 at the time of the hearing. Her history as a mother is sad. She has borne six children, one of whom died shortly after birth. All of the remaining five children have been placed in foster care or released for adoption. In 1964 three of her children were taken from her for "leav[ing the] * * * three children alone while [she] went out for a few days on a binge." She testified that she was convicted of child neglect at that time and received a 90-day jail sentence.

"Q And this was the same reason that [A.] was taken away from you six years later, wasn't it?

"A Yes."

---

[2] ORS 419.523 provides:

"(1) The parental rights of the parents of a child * * * may be terminated as provided in this section and ORS 419.525. * * *

"(2) The rights of the parent or parents may be terminated as provided in subsection (1) of this section if the court finds that the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the home of the parent or parents is improbable in the forseeable [sic] future due to conduct or conditions not likely to change. In determining such conduct and conditions, the court shall consider but is not limited to the following:

"* * * * *

"(e) Lack of effort of the parent to adjust his circumstances, conduct, or conditions to make the return of the child possible or failure of the parent to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected.

"* * * * *."

Since the birth of A. and her placement in foster care, her mother has given only lip service to regaining custody and providing a home for her. At the hearing, it was stipulated that from the time of birth to the date of the hearing, the Public Welfare Division and the Children's Services Division have been trying to set up a program for Mrs. P. Two letters from the Children's Services Division to Mrs. P. were introduced and it was stipulated that these letters were representative of 35 letters which were "sent by the Department to Mrs. [P.] during the time that they were trying to work out this plan as we have stipulated." The letters stressed the importance of visitation and the responsibility which Mrs. P. must demonstrate if she were to regain custody of A.

The mother's efforts at rehabilitation are apparently sincere. It is unfortunate that they are so late and, based upon her prior performance, so illusory. She has been consistent in expressing her desire and intention that the return of A. will become a reality. Since 1970, she has stated that she would be ready to resume care of A. within a few months. In 1971 she estimated she would need only two more months, but no progress was made. She continued to correspond with the Children's Services Division, advising that she intended to resume visits with A., but nothing was accomplished. The same was true in 1973 and 1974. Mrs. P. testified:

"Q How long from the time, say from January 1974, how long did you think it would take you to get [A.] back?

"A Probably about six months.

"Q You knew that if you wanted [A.] back in six months you would have to visit regularly, wouldn't you?

"A Yes.

"Q Did you?

"A I have had a lot of finances and was out of work and I had to draw unemployment.

"Q I beg your pardon?

"A I had to draw unemployment and I had barely got enough to pay the rent, I got behind in all the payments that I had.

"Q But you kept writing letters saying that you would go to visit, didn't you?

"A Yes.

"Q But you didn't, did you?

"A No."

At the time of hearing she testified that she was not ready to take care of A., but thought she would be in three months. She thought marriage might help her, though she said she had no prospects for marriage and she had "a lot of pressing bills."

Meanwhile, A. has remained in foster care for these five-plus years, fortunately, in a stable, consistent, loving home. She is, however, in limbo, and will remain so unless the mother's parental rights are terminated. The well-meaning but irresponsible mother has of her own volition made choices, the effect of which is to substitute the child's foster parents for the biological parent. The child does not recognize her mother as her parent, but rather as a casual friend.

For the foregoing reasons we conclude, contrary to the finding of the trial court, that the welfare of the child is being jeopardized by the present situation; that the mother, by conduct which has been and is seriously detrimental to the child, has demonstrated that she is unfit to continue as parent of the child and that integration of the child into her home in the foreseeable future is improbable due to the conduct of

the mother, which experience dictates is not likely to change.

> "* * * When a parent sets a course of events in motion which leads to alienation of the relationship with children, it is the parent's rights, not the children's, which must give way in such conflict. * * *" *State ex rel Juv. Dept. v. Wagner,* 21 Or App 396, 535 P2d 102, Sup Ct *review denied* (1975).

The petition to terminate parental rights is allowed. *State ex rel Juv. Dept. v. Wagner,* supra; *State ex rel Juv. Dept. v. Gonzales,* 21 Or App 103, 533 P2d 1382, Sup Ct *review denied* (1975).

Reversed.